UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOLITA WHITE,

        Plaintiff,                      CIVIL ACTION NO. 07-10394

        v.                              DISTRICT JUDGE BERNARD A. FRIEDMAN

COMMISSIONER OF                    MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion be granted and that plaintiff's cross-motion be denied.

**II. Background**

On February 3, 2004, plaintiff filed applications for Supplemental Security Income (SSI), alleging that she was disabled due to a learning disability and mental impairment, with an onset date of December 24, 2003. (Tr. 78-80, 107-108) Plaintiff attended special education classes in school and she completed high school through the 11th grade. She has no relevant work experience. (Tr. 108, 110, 193)

The Social Security Administration (SSA) denied plaintiff's applications on April 27, 2004. (Tr. 28-31) Plaintiff then requested a hearing before an administrative law judge (ALJ).

(Tr. 32) A short hearing was held on April 12, 2006 before ALJ Mary Susan Connolly. Plaintiff, who was not represented by counsel, appeared and briefly testified at the hearing. (Tr. 200-211) A second hearing was held on July 13, 2006, also before ALJ Connolly. Plaintiff, now represented by appointed counsel, appeared and testified at the hearing. The ALJ also took testimony from a vocational expert (VE). (Tr. 179-199)

On August 18, 2006, the ALJ issued a decision denying plaintiff's claim. (Tr. 11-26) The ALJ determined that plaintiff had the following impairments: "borderline intellectual functioning, a reading disorder, and a learning disability." (Tr. 17) The ALJ also determined that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii) and § 416.920(a)(4)(ii), but that she did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 17) The ALJ further determined that plaintiff has the residual functional capacity (RFC) to perform simple, unskilled work. (Tr. 23) Taking into account plaintiff's age, education, work experience, and residual functional capacity, as well as the hearing testimony of the VE, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 25) Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 26) Plaintiff was 26 years-old at the time of the ALJ's decision. (Tr. 11, 78)

On August 22, 2006, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 9) The Council denied the request on December 19, 2006. (Tr. 5-8) The ALJ's decision thus became the final determination of the Commissioner.

On January 24, 2007, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends that, because the ALJ erred in assessing plaintiff's IQ scores and credibility, the ALJ erred in finding that plaintiff's impairments did not meet or equal a listed impairment. Plaintiff also contends that the ALJ failed to include all of plaintiff's mental limitations in plaintiff's RFC. The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

## III. Legal Standards

### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). See also 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). See also 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate SSI claims. 20 C.F.R. § 416.920. In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV. Analysis**

As discussed above, plaintiff contends that the ALJ erred in finding that plaintiff's impairments did not meet or equal a listed impairment, and by failing to include all of plaintiff's mental limitations in the RFC.

### A. Listed Impairment

Plaintiff argues that the ALJ erred by finding that her impairments did not meet or equal any impairment listed in Subpart P, Appendix 1 of the Social Security Regulations. A claimant must satisfy all the criteria of a Listing to be found to have met or equaled a Listing. Hale v Secretary of Health and Human Services, 816 F.2d 1078, 1083 (6th Cir. 1987). Specifically, plaintiff argues that, if her IQ tests and credibility are accurately assessed, she satisfies all of the criteria for Listing 12.05 C, mental retardation. Listing 12.05 provides:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> Or

B. A valid verbal, performance, or full scale IQ of 59 or less;

Or

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Or

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration. [20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.]

Furthermore, the provision for all mental disorders states that:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required

> under paragraph B of the other mental disorders listings. [20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.]

In arguing that the ALJ erred in finding that she did not meet or equal the requirements for showing mental retardation under Listing 12.05 C plaintiff points to her IQ scores, mental RFC assessment, PRTF, and testimony in support of the contention that she satisfies all requirements. Yet, even if plaintiff's arguments were accepted, it is not enough for plaintiff to satisfy paragraph C of 12.05; she must also satisfy the "diagnostic description" of mental retardation in Listing 12.05. Foster v. Halter, 279 F.3d 348, 354 (6th Cir.2001). That description states "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

In her brief, plaintiff never addresses the requirement that she must satisfy the diagnostic description of mental retardation and it is undisputed that no psychologist has diagnosed plaintiff with mental retardation. Dr. Edward Czarnecki and Dr. Nick Boneff examined plaintiff, at separate times, and both diagnosed plaintiff as having borderline intellectual functioning. (Tr. 149, 167) Moreover, plaintiff performed a number of common activities inconsistent with mental retardation, including taking care of her sick best friend (189), working briefly as a hairdresser and as a cook (187-188), driving (190), cleaning her house and taking care of her child (115), shopping (117), paying bills (118), managing a savings account and checkbook (118), and playing baseball (118). Given the doctors' medical opinions and plaintiff's daily activities, there is substantial evidence in the record that plaintiff does not meet the diagnostic description of Listing 12.05 and, consequently, does not meet or equal any impairment listed in

Subpart P, Appendix 1 of the Social Security Regulations. See Foster v. Halter, 279 F.3d 348, 354-355 (6th Cir.2001) (plaintiff's failure to meet criteria of diagnostic description compels a conclusion that she does not meet or equal Listing 12.05); Cooper v. Commissioner of Social Security, 217 Fed. Appx. 450, 452 (6th Cir. 2007) (unpublished) (holding that diagnoses of borderline intellectual functioning and common activities inconsistent with mental retardation provided substantial evidence that plaintiff did not meet diagnostic description); Riley v. Apfel, No. 97-1799, 1998 WL 553151, at *5 (6th Cir. August 20, 1998) (unpublished) (two diagnoses of low average intelligence substantially supports a determination that plaintiff should not be diagnosed with mental retardation).

### B. Mental Impairments

Plaintiff also argues that the ALJ erred by failing to include all of plaintiff's mental limitations in the RFC. Specifically, plaintiff argues that the ALJ failed to limit plaintiff to working in low stress conditions. The only support that plaintiff offers for that position is her argument that Dr. Czarnecki found that plaintiff was so limited after performing a mental RFC assessment.

Dr. Czarnecki did state that plaintiff is "able to relate, interact, and communicate adequately under low stress conditions" (Tr. 149), and that plaintiff "can tolerate low stress social demands." (Tr. 150) However, Dr. Czarnecki found that plaintiff retains the mental capacity "to sustain a routine of simple work activity . . . adequate to simple demands." (Tr. 149) Dr. Czarnecki also concluded that plaintiff can "sustain a simple routine independently" and "adapt to simple changes in routine." (Tr. 149-150) Thus, while Dr. Czarnecki noted plaintiff's ability to tolerate low stress social conditions, he never concluded that plaintiff was

limited to working in low stress conditions and he did not include such a restriction in his opinion. Likewise, no other medical source in the record formed such an opinion. Dr. Boneff did find that plaintiff was slightly restricted in her ability to interact with the public (Tr. 170), but he never set any restrictions on plaintiff's ability to work.

The ALJ concluded that plaintiff was "capable of performing simple, unskilled work." (Tr. 23) Given the medical opinions found in the record, in addition to plaintiff's daily activities discussed above, there is substantial evidence supporting that conclusion.

**V. Conclusion**

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: September 10, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on September 10, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan